IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

JOE WALDRON,

    Plaintiff-Appellant,

                                   Bradford Chancery No. 20,214

Vs.                              C.A. No. 01A01-9712-CH-00740

GARY DELFFS and wife CLARA
DELFFS and JAMES COY DELFFS,

    Defendants-Appellees.

_____

FROM THE BEDFORD COUNTY CHANCERY COURT
THE HONORABLE TYRUS C. COBB, JUDGE

FILED

August 24, 1998

Cecil W. Crowson
Appellate Court Clerk

John H. Norton, III of Shelbyville
Thomas F. Bloom of Nashville
For Appellant

Allen Shoffner of Shelbyville
For Appellee, James Coy Delffs

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

      This case involves an attempt to recover money on a loan. Plaintiff/Appellant Joe

Waldron (Waldron) appeals from the trial court's order granting judgment on the pleadings to

Defendant/Appellee James Coy Delffs.

      Waldron's Complaint alleges that on May 1, 1991, Defendants Gary and Clara Delffs

borrowed from Waldron $50,000 at an interest rate of thirteen (13%) percent. This indebtedness was to be due and payable on May 1, 1992. In July of 1991, Gary and Clara Delffs borrowed an additional $30,000 from Waldron that was also to be due and payable on May 1, 1992. The loan was still outstanding on May 1, 1992, at which time Waldron extended the loan for another year and lent an additional $4,000 to Gary and Clara Delffs. At this time, a note evidencing the total indebtedness was signed by Gary and Clara Delffs, as well as by James Coy Delffs, the father of Gary Delffs. The sum plus twelve (12%) percent interest was to be due and payable on May 1, 1993. The loan was again renewed in May of 1993, at which time Waldron alleges that he was owed the principal indebtedness of $120,000 plus eleven (11%) percent interest to be due and payable on May 1, 1994.

When the loan was again not paid off in May of 1994, the parties entered into further negotiations that resulted in the execution on June 10, 1994 of the note at issue in this case. This instrument provides in pertinent part:

> --------------------------- after date ------------- promise to pay
>
> to the order of <u>one hundred and fifty three thousand and four</u>
>
> <u>hundred and fourty dollars</u> Dollars

(The language underlined was written in by hand. Unused space is evidenced by hyphens.) A copy of the note is attached as an addendum to this Opinion. Although there is some confusion on the document, Waldron alleges that the note was due and payable by all defendants by June 10, 1995.[1] Alleging that this document is a promissory note, Waldron sought judgment on the "note" in the amount of $174,014.72 plus interest.

The defendants filed an Answer admitting that Waldron made certain loans to Gary Delffs but disputing the amounts and interest rates represented in Waldron's complaint. The defendants also averred that the money was loaned *solely* to Gary Delffs, that the defendants signed the note in blank, and that the note is unenforceable since no consideration was provided for the defendants' signatures. Defendant James Delffs filed an Amended Answer, Counter-Claim, and Cross-Claim asserting that the note was blank when signed and completed without authority, the note was "fraudulently and materially altered," Waldron was not a holder in due

---

[1] Apparently the instrument originally indicated that the amount is due on June 6, 1994, but the document was subsequently altered by Waldron with Gary Delffs's consent to show "1995," instead.

course, a condition precedent had not been satisfied, the note fails for lack of consideration, Waldron and the other defendants conspired to deceive him into signing the document, the note violates the Statute of Frauds, and the interest rate on the note is usurious. Waldron filed a summary judgment motion, and James Delffs filed a motion for judgment on the pleadings or, alternatively, for summary judgment.

On January 10, 1997, the trial court entered judgment on the pleadings for James Delffs and dismissed the complaint as to him, finding that the instrument failed to qualify as a valid promissory note. The trial court also found that this instrument was not a sufficient memorandum of a promise to pay the debt of another to satisfy the Statute of Frauds. In November of 1997, the trial court entered a judgment against the remaining defendants. Thereafter, Waldron timely filed a Notice of Appeal of the trial court's January order. James Delffs is the sole Appellee in this case.

The sole issue for review is whether the trial court erred in granting judgment on the pleadings to James Delffs. When a motion for judgment on the pleadings is made by the defendant, it is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. 3 Nancy F. MacLean & Bradley A. MacLean, Tennessee Practice 190 (2nd ed. 1989). A motion to dismiss for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure. *Cornporpst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action. *Id.* at 190. In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 130 (Tenn. App. 1990). A complaint should not be dismissed upon such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Id.* at 130 (quoting *Fuerst v. Methodist Hosp. South,* 566 S.W.2d 847, 848 (Tenn. 1978)). In the instant case, the complaint seeks recovery on a written instrument attached as an exhibit and a determination of the validity of the instrument is a question of law. Therefore, our review of the trial court's order is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The instrument at issue was executed in June of 1994. The Tennessee General Assembly amended

its version of the Uniform Commercial Code (UCC) in 1995.[2] There is no dispute that the applicable statutes in this case are those that existed at the time that the document was signed in 1994. *See Shell v. State*, 893 S.W.2d 416, 419 (Tenn. 1995) ("[A] basic rule of statutory construction provides that statutes are to be applied prospectively, unless the legislature clearly indicates to the contrary."); 17A Am. Jur. 2d *Contracts* § 254 (1991) ("[I]t is the law in force at the time a contractual transaction is consummated and made effectual that must be looked to as determining its validity and effect.").

Tennessee Code Annotated § 47-3-104 (Supp. 1992)[3] states:

> (1) Any writing to be a negotiable instrument within this chapter must:
>   (a) be signed by the maker or drawer; and
>   (b) contain an unconditional promise or order to pay:
>       (i) a sum certain in money;
>       (ii) a sum in money which is determinable by a formula as provided in the writing, whether or not such formula requires the use of extrinsic criteria; or
>       (iii) a sum of money the amount of which is subject to renegotiation upon either the passage of time or the occurrence of an event.
>   (c) be payable on demand or at a definite time; and
>   (d) be payable to order or to bearer.

Subsections (c) and (d) are in dispute in the present case. We shall first examine the latter subsection.

Subsection (d) requires that the instrument be payable to order or bearer. *Id.* § 47-3-104 (1)(d). Since, the parties do not dispute that the document is not order paper, the issue concerns whether the document constitutes bearer paper. Tennessee Code Annotated § 47-3-111 (1979) states that an instrument is bearer paper if it is paya

> (a) bearer or the order of bearer; or
> (b) a specified person or bearer; or
> (c) "cash" or the order of "cash," or any other indication which does not purport to designate a specific payee.

Since there is no dispute that subsections (a) and (b) are inapplicable and that the instrument in the present case is not made payable to "cash" or order thereof, inquiry in this matter focuses on whether the instrument includes "any other indication which does not purport to designate a specific payee." *Id.* § 47-3-111 (c).

No Tennessee cases have addressed the issue at hand. James Delffs cites decisions in *Davis v. Davis*, 838 S.W.2d 415 (Ky. App. 1992), and *Parker v. Pledger*, 601 S.W.2d 897 (Ark. App. 1980), in which courts in our neighboring states held that instruments that contain blank space where the payee is intended to be designated are not bearer instruments. These decisions are fully supported by the official comments to § 3-111 of the UCC, as it existed at that time, which state:

---

[2] This revision was placed into effect on July 1, 1996.

[3] This is the supplement to the 1979 bound volume.

Paragraph (c) is reworded to remove any possible implication that "Pay to the order of _____" makes an instrument payable to bearer.

T.C.A. § 47-3-111 Comments to Official Text. We find that these cases are inapposite to the case at hand, since the parties in the instant case did not leave blank the space designated for the listing of the payee.

James Delffs also cites *Broadway Mgmt. Corp. v. Briggs*, 332 N.E.2d 131 (Ill. App. 1975), a case in which the factual circumstances are remarkably similar to the instant case. In *Broadway Mgmt.*, the instrument at issue reads in pertinent part as follows:

Ninety Days after date, , we, or either of us, promise to pay to the order of Three Thousand Four Hundred Ninety Eight and 45/100 - - - - - - - Dollars." (The underlined words and symbols have been typed in; the remainder is printed.) There are no blanks on the face of the instrument, any unused space having been filled in with hyphens.

*Id.* at 132. After citing the aforementioned portion of the official comments to U.C.C. § 3-111, the Illinois Court found:

The instrument here is not bearer paper. We cannot say that it "does not purport to designate a specific payee." Rather, we believe the wording of the instrument is clear in its implication that the payee's name is to be inserted between the promise and the amount, so that the literal absence of blanks is legally insignificant.

*Broadway Mgmt.*, 332 N.E.2d at 133. James Delffs also cites Anderson's treatise on the UCC, which states: "When a note is improperly written so that the blank for the name of the payee shows the amount to be paid, the paper is not bearer paper." Ronald A. Anderson, Uniform Commercial Code § 3-111:4, at 275-76 (3d ed. 1994). However, *Broadway Mgmt.* is the only authority cited by Anderson in support of this contention.

We believe that the holding in *Broadway Mgmt.* is difficult to reconcile with a reading of the official comments to UCC § 3-111. When interpreting subsection (c), the comments specifically state:

Instruments payable to the order of an estate, trust, fund, partnership, unincorporated association or office are covered by the preceding section. This subsection applies only to such language as "Pay cash," "Pay to the order of cash," "Pay to the order of one keg of nails," or other words which do not purport to designate any specific payee.

T.C.A. § 47-3-111 Comments to Official Text. Interpreting this comment, White and Summers have opined that "it appears that any document which directs payment to or to the order of an inanimate object qualifies as a bearer instrument…." James J. White and Robert S. Summers, Uniform Commercial Code § 14-4, at 621 (3d ed. 1993); *see also* Crandall, Herbert & Lawrence, Uniform Commercial Code § 16.3.1 (1996).

As stated previously, T.C.A. § 47-3-111 provides that an instrument constitutes bearer paper if it is payable to "*any other indication* which does not purport to designate a specific payee." *Id.* § 47-3-111 (c) (emphasis added). The provision does not contain any language that qualifies the language, "any other indication." *Id.* There is no logical justification for creating a distinction between the designation of an inanimate object, such as a keg of nails, as the payee and the designation of a certain sum of money as the payee. Judicially creating such a distinction would

5

risk uncertainty for contracting parties, thus thwarting the very intent of the adoption of the UCC. *See* T.C.A. § 47-1-102 (2) (1996). Moreover, Waldron aptly notes that it would appear to be a "perversion of logic" if an instrument payable to "cash" qualifies as bearer paper, whereas an instrument payable to a specific amount of cash fails to qualify as bearer paper. Therefore, we decline to follow the holding of the Illinois Court in *Broadway Mgmt.* and, instead, hold that the instrument at issue qualifies as a negotiable instrument since it constitutes bearer paper.

Alternatively, James Delffs also asserts that the instrument fails to qualify as a negotiable instrument because it does not satisfy the requirement in T.C.A. § 47-3-104 (c) that it be payable "at a definite time." James Delffs argues that since Waldron altered the payable date from "June 10, 1994" to "June 10, 1995," there is ambiguity on the face of the document. This contention is without merit for two reasons. First, we are dealing with a motion for judgment on the pleadings, and the note as part of the pleadings indicates that the payment date is June 10, 1995, which we take as true. In any event, a negotiable instrument must be "payable on demand or at a definite time." T.C.A. § 47-3-104 (c). If the payable date had not been altered, we know it would have been payable on the date that it was executed, June 10, 1994. Therefore, it should be considered a demand note. *See* T.C.A. § 47-3-108 (1979); *In re: Estate of Myers*, 55 Tenn. App. 195, 206, 397 S.W.2d 831, 837 (1965). Thus, the fact that the note was altered enured to the benefit of James Delffs.[4]

Since the note at issue satisfies the criteria set forth in T.C.A. § 47-3-104, it qualifies as a negotiable instrument. Accordingly, the order of the trial court dismissing plaintiff's complaint against James Delffs is reversed, and this case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed against the Appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

---

[4] As a practical matter if the testimony of the parties was considered it appears that the alteration was made with the consent of Gary Delfs.