# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 6, 2012 Session

## GEORGE CLAY, III., v. FIRST HORIZON HOME LOAN CORPORATION

**Appeal from the Chancery Court for Hamilton County**
**No. 11-0112    Hon. Jeffrey M. Atherton, Chancellor, Part 2**

---

### No. E2011-01503-COA-R9-CV-FILED-JUNE 26, 2012

---

Plaintiff sued defendant mortgage company that held a mortgage on his home, on which defendant foreclosed.  Plaintiff's alleged cause of action was that defendant had received money from the U.S. Treasury pursuant to the Troubled Asset Relief Program, and that defendant failed to properly consider him for a home loan modification pursuant to the federal acts and regulations.  Defendant moved to dismiss for failure to state a cause of action and the Trial Court dismissed part of plaintiff's complaint, but denied defendant's motion as to plaintiff's third party beneficiary claim, the negligent implementation of the HAMP claim and the wrongful foreclosure claim.  Defendant sought a Tenn. R. App. P. 9 appeal, which was granted by the Trial Court and this Court and we hold that under the federal acts and regulations, there was no provision for a private right of action claim, and reverse so much of  the Trial Court's judgment that holds otherwise.


**Tenn.  R. App. P. 9 Appeal; Judgment of the Chancery Court Reversed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.


Kristine L. Roberts, and Robert F. Tom, Memphis, Tennessee, and John A. Barney, Brentwood,  Tennessee, for the appellant, First Horizon Home Loan Corporation.

Peter C. Ensign, Chattanooga, Tennessee, for the appellee, George Clay, III.

**OPINION**

Plaintiff/appellee George Clay, III, filed a Complaint against defendant/appellant First Horizon Home Loans, a division of First Tennessee Bank National Association (First Horizon), on February 16, 2011. The Complaint alleges that First Horizon wrongfully foreclosed on plaintiff's property, and that First Horizon received money from the U. S. Treasury pursuant to the Troubled Asset Relief Program (TARP). Further that, in partial consideration for the TARP funds, First Horizon agreed to participate in the Home Affordable Modification Program (HAMP), which is a program designed to provide assistance to homeowners to avoid foreclosure. First Horizon's agreement to participate in HAMP is governed by a Service Provider Agreement (SPA). The Complaint describes HAMP as a program created by the Secretary of the Treasury and the Director of the Federal Housing Finance Agency pursuant to the Emergency Economic Stabilization Act of 2008 (EESA), as amended by the American Recovery and Reinvestment Act of 2009.

Mr. Clay alleges First Horizon failed to properly consider him for a home loan modification pursuant to HAMP when he fell behind on his mortgage payments to the lender. Clay asserted the following causes of actions: (1) breach of contract based on his alleged status as an intended third-party beneficiary under TARP and HAMP; (2) negligent implementation of HAMP; (3) wrongful foreclosure; (4) violation of the Tennessee Consumer Protection Act (TCPA); and (5) breach of the covenant of good faith and fair dealing.

First Horizon filed a Motion to Dismiss pursuant to Tenn. R. Civ. P. 12 for failure to state a claim upon which relief can be granted. Although appellant states in its appellate brief that one of the arguments made by First Horizon was that there was no private right of action under TARP or HAMP, the brief in support of the motion to dismiss is not part of the appellate record. Mr Clay filed a response to the motion to dismiss and a Motion for Leave to Amend. Exhibit A to the response was the proposed Amended Complaint. The motion to amend was never granted, but the Trial Court entered an Order on May 16, 2011 granting the Motion to Dismiss plaintiff's TCPA and breach of the covenant of good faith and fair dealing claims. The Court, however denied defendant's motion as to the third party beneficiary claim, the negligent implementation of HAMP claim and the wrongful foreclosure claim.

First Horizon made application for permission to appeal pursuant to Tenn. R. App. 9, with regard to the claims premised on plaintiff's allegations that he is a third-party beneficiary under HAMP and that he has a right of direct action under HAMP. The Trial Court entered an Order granting First Horizon's motion, and this Court granted First Horizon's application for permission to appeal.

The facts set forth in the Complaint are as follows: On February 9, 2004, Mr. Clay executed a Deed of Trust in favor of First Horizon. In 2010, Mr. Clay had a dramatic drop in income due to illness and he contacted First Horizon to inquire what he could do to handle his mortgage payments in view of this development. As a result of these discussions, Mr Clay claims that there was an agreement whereby he could make partial mortgage payments. However, when he sent the partial payments to First Horizon, the lender rejected them and returned them to Mr. Clay's address. Apparently, the post office held the returned payments until January 5, 2011, when they were returned to Mr. Clay. Upon receipt of the returned payments, Mr. Clay called First Horizon and was told that he needed to pay $3,700.00 to reinstate the loan. He was also assured that a representative would contact him the following Monday to discuss options for making this payment. He claims, however, that he never received the call from First Horizon, and he then contacted the foreclosure attorney and explained the situation. He was told that the information he provided to the attorney would be passed on to First Horizon and that someone would get back to him. Mr. Clay claims that the next communication he received regarding the mortgage on his home was a notice from a realtor that the home had been sold.

The issues presented for review are:

A.      Whether the Trial Court erred when it denied First Horizon Home Loan Corporation's Motion to Dismiss the cause of action premised on plaintiff's claim that he is an intended third-party beneficiary of a Servicer Participation Agreement between First Horizon Loan Corporation and the U.S. Government created pursuant to the federal Home Affordable Modification Program?

B.      Whether the Trial Court erred when it denied First Horizon Home Loan Corporation's Motion to Dismiss the cause of action based on the premise that First Horizon negligently implemented the terms of the contract?

C.      Whether the Trial Court erred when it denied First Horizon Home Loan Corporation's Motion to Dismiss the cause of action based on wrongful foreclosure?

Our standard of review as to the granting of a motion to dismiss is set out in *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714 (Tenn.1997) as follows:

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not

constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R.App. P. 13(d); *Owens v. Truckstops of America,* 915 S.W.2d 420, 424 (Tenn.1996); *Cook, supra.*

*Id.* at 716.

## Discussion

There is no private right of action under HAMP. Federal law controls the interpretation of the HAMP contract because the contract is entered into under federal law and one of the parties to the contract is the United States. *Nafso v. Wells Fargo Bank, NA,* 11-10478, 2011 WL 1575372 (E.D. Mich. Apr. 26, 2011); *Nash v. GMAC Mortg., LLC,* CA 10-493 S, 2011 WL 2470645 (D.R.I. May 18, 2011) *report and recommendation adopted,* CA 10-493 S, 2011 WL 2469849 (D.R.I. June 20, 2011).

The United States Supreme Court has stated that the inquiry as to whether a private right of action exists under a federal statute requires an examination of the statutory language to determine whether Congress has expressed an intent to create both a private right of action and a private remedy in *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001):

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (remedies available are those "that Congress enacted into law"). The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Statutory intent on this latter point is determinative. See, *e.g., Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1102, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 812, n. 9, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (collecting cases). Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. See, *e.g., Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 148, 105 S.Ct. 3085,

87 L.Ed.2d 96 (1985); *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* at 23, 100 S.Ct. 242; *Touche Ross & Co. v. Redington, supra,* at 575-576, 99 S.Ct. 2479.

*Alexander*, 121 S. Ct. 1511, 1519-20.

On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008, Pub.L. No. 110–343, 122 Stat. 3765 (codified 12 U.S.C. § 5201 *et seq.*) (*"EESA"*). Section 109 required the Secretary of the Treasury ("the Secretary") to take certain measures in order to encourage and facilitate loan modifications. 12 U.S.C. § 5219. However, Section 109 did not create any private right of action against servicers for grievances relating to the EESA. *Ramirez v. Litton Loan Serv., LP,* 2009 WL 1750617, *1 (D.Ariz.2009); *Barrey v. Ocwen Loan Serv., LLC,* 2009 WL 1940717, * 1 (D.Ariz.2009). The EESA authorized the Secretary of the Treasury, FHFA, Fannie Mae, and Freddie Mac to create the Making Home Affordable Program on February 18, 2009, which consists of two components: (1) the Home Affordable Refinance Program, and (2) the HAMP. *Williams [v. Geithner],* 2009 WL 3757370 *2 [(D.Minn. 2009)].  The HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.

The HAMP works by providing financial incentives to participating mortgage servicers to modify the terms of eligible loans. On March 4, 2009, the Secretary issued guidelines under the HAMP requiring lenders to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower was being evaluated for a modification. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009).

The origin of the HAMP program and the question of whether there is a private right of action under HAMP or the EESA has been discussed in multiple cases by the federal courts around the country.  The discussion included in *Marks v. Bank of Am., N.A.,* 03:10-CV08039PHXJAT, 2010 WL 2572988 (D. Ariz. June 22, 2010) is representative of the history of the program and discussion on whether there is a private right of action provided in many of the cases:

> Per designation by the Secretary, Freddie Mac serves as compliance officer for the HAMP. U.S. Dep't of Treasury, Supplemental Directive 2009–08, at 4 (Nov. 3, 2009). The HAMP requires mortgagees to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program. *See* Supplemental Directive 2009–01, at 13–14, 19–21 (Apr. 6, 2009); Supplemental Directive 2009–06 (Sept. 11, 2009). As the compliance agent, Freddie Mac is charged with conducting "independent compliance assessments" including "evaluation of

documented evidence to confirm adherence ... to HAMP requirements" such as the evaluation of borrower eligibility. Supplemental Directive 2009–01, at 25–26.

**Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.** *See Reyes–Gaona v. N.C. Growers Ass'n,* 250 F.3d 861, 865 (4th Cir.2001) (reiterating that "the doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").

*Marks* at * 5 - 6.

Thus, neither the EESA or the HAMP Guidelines provide borrowers with a private right of action and the courts throughout the United States who have considered the issue have essentially determined that a private right of action does not exist to enforce the terms of the EESA or HAMP, based on the analysis stated in *Marks supra.* *See, e.g., Grona v. CitiMortgage, Inc.,* 3-12-0039, 2012 WL 1108117 at * 5 (M.D. Tenn. Apr. 2, 2012); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D.Mich. 2010); *Warner v. Wells Fargo Bank, NA,* No. SACV 11-00480 DOC (PLAx), 2011 WL 2470923 at * 3 (C.D.Cal., June 21, 2011); *Warren v. Bank of Am.,* No. 4:11-CV-70, 2011 WL 2116407 at * 2 - 3 (S.D. Ga. May 24, 2011); *In re Salvador,* 456 B.R. 610, 626 (Bankr. M.D. Ga. May 12, 2011); *McInroy v. BAC Home Loan Servicing LP,* No. CIV 100-4342 DSD/SER, 2011 WL 1770947 at *3 (D. Minn. May 9, 2011); *Houston v. U.S. Bank Home Mortg. Wisconsin Servicing,* No. 10-13780, 2011 WL 1641898 at * 6 (E. D. Mich. May 2, 2011); *Nafso v. Wells Fargo Bank*, *NA*, 2011 WL 1575372 at * 4; *LaSalle Bank Nat'l Ass'n v. Ray,* No. 09-13526, 2011 WL 576661 at * 5 (E. D. Mich. Feb. 9, 2011); *Zoher v. Chase Home Fin.* No. 10-14135-CIV, 2010 WL 4064798 at * 3 -4 (S. D. Fla. Oct. 15, 2010); *Simon v. Bank of Am., N.A.*, No. 10-CV-00300-GMN-LRL, 2010 WL 2609436 at * 10 (D. Nev. June 23, 2010); *Marks v. Bank of Am, N.A.*, 2010 WL 2572988 at * 5 - 7; *Aleem v. Bank of Am., N.A.*, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330 at *3 (C.D. Cal. Feb. 9, 2010); *Gonzales v. First Franklin Loan Svcs.,* No. 1:09-CV099941-A WI-GSA, 2010 WL 144862 at * 18 (E.D. Cal. June 11, 2010); *Thomas v. U.S. BankNat. Ass'n.* No. 11-3417 (FLW), 2012 WL 646056 at * 2 (D.N.J. Feb. 28, 2012); *Correll v. Bank of America, N.A.,* No. 2-11-CV-477, 2012 WL l348594 at * 4 (E. D. Va. Feb. 2, 2012); *Ramos v. Wells Fargo Home Mortg.,* No. 11-CV-03130-AW, 2012 WL 261308 at * 3 (D. Md. Jan. 26, 2012); *Soto v. Wells Fargo Bank, N.A.*, No. 11-140642012, 2012 WL 113534 at * 9 (E.D. Mich. Jan. 13, 2012); *Easley v. Federal Nat. Mortg. Ass'n.* No. 4:10-CV-03734, 2011 WL 6002644 at * 5 (S. D. Tex. Nov. 30,

2011).

The holdings in these case that neither the EESA nor the HAMP Guidelines provide borrowers with a private right of action was very recently confirmed by the United States Eleventh Circuit Court of Appeals in *Miller v. Chase Home Fin., LLC*, 11-15166, 2012 WL 1345834 (11th Cir. Apr. 19, 2012). In that case the Eleventh Circuit reviewed the district court's dismissal for failure to state a claim based on the legal conclusion that HAMP does not provide a private right of action. At the outset of its analysis, the Appellate Court noted that it had not addressed, in a published opinion, whether there is an implied private right of action under HAMP. *Id.* at *1. The Court considered the following in determining whether such a remedy exists:

> (1) is the plaintiff one of the class for whose *especial* benefit the statute was enacted;
>
> (2) is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plaintiff; and (4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Id.* at * 2. (citing *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inves.,* 553 F.3d 1351, 1362 n. 14 (11th Cir.2008)).

The Court applied the above stated factors to HAMP and EESA, and concluded that "it is clear that no implied right of action exists." The Court found that:

> First, EESA and HAMP were designed to "provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1). EESA was not passed for the "especial benefit" of struggling homeowners, even though they may benefit from HAMP's incentives to loan servicers.
>
> Second, there is no discernible legislative intent to create a private right of action; in fact, the legislature gave the Secretary the right to initiate a cause of action, via the Administrative Procedure Act. *Id.* § 5229(a)(1). Third, providing a private right of action against mortgage servicers contravenes the purpose of HAMP—to encourage servicers to modify loans—because it would likely chill servicer participation based on fear of exposure to litigation. And fourth, "[c]ontract and real property law are traditionally the domain of state law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 174, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

*Miller* at * 2.

Based upon the finding that none of the relevant factors favor an implied right of action, the Court concluded that no such right exists. *Miller* at * 2 (citing *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)) and the Court affirmed the district court's dismissal of the suit for failure to state a claim. *Miller* at * 2.

Plaintiff/appellee has asserted that the Eleventh Circuit's opinion in *Miller* is in direct conflict with a recent Seventh Circuit opinion, *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012). However, the Seventh Circuit in *Wigod* agreed with the Eleventh Circuit's holding in Miller that "Congress did not create a private right of action to enforce the HAMP guidelines, and since Astra, district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs." *Wigod*, 673 F.3d 547, 559 n. 4. *Wigod* did conclude that a specific and narrow category of claims, based on separate Trial Period Plan (TPP) agreements, may be actionable. *Id*. However, as the Eleventh Circuit's decision in *Miller* did not address causes of actions arising under TPP agreements, there is no conflict between the two decisions. Moreover, *Wigod*'s finding that homeowners may have an actionable claim based on TPP agreements is inapplicable to this case, as there has never been any allegation that Mr. Clay ever entered into a TPP with First Horizon.

Plaintiff argues that "First Horizon owed a duty to Mr. Clay to properly evaluate him for eligibility under HAMP before proceeding with foreclosing on his home" and "[b]y proceeding with foreclosure [before] evaluating Mr. Clay under HAMP, First Horizon breached its duty to Mr. Clay." Because HAMP provides no private right of action to Mr. Clay, as discussed, the Trial Court erred when it did not dismiss his negligence claim against First Horizon. Similar HEMP based negligence claims have been addressed and rejected by numerous courts in the past year. For example, in *Thomas v. JPMorgan Chase & Co.,* 811 F. Supp. 2d 781 (S.D. N.Y. 2011), the plaintiffs asserted a negligence claim that was essentially the same as the negligence claim asserted by Mr. Clay. The *Thomas* plaintiffs claimed that defendants owed them "a duty of reasonable care in the processing and determination of the loan modification applications and the processing of their foreclosures" and that defendants breached this duty by "failing to properly evaluate [p]laintiffs' . . . loan modification applications and foreclosures." The Court dismissed the negligence complaint noting that the "SPA and the other terms of HAMP do not impose a duty on defendants with respect to borrowers." *Thomas*, 811 F. Supp. 2d at 800.

In another similar care, *Newell v. Wells Fargo Bank, N.A.*, C 10-05138 WHA, 2012 WL 27783 (N.D. Cal. Jan. 5, 2012), the plaintiffs alleged with a stand-alone claim as well as a third-party beneficiary claim that Wells Fargo had violated HAMP regulations because

the lender foreclosed on their home while they had a pending loan modification application at the time of the sale. The district court dismissed this cause of action, finding that there is no private cause of action to enforce HAMP. *Id.* at * 6.

In this case, plaintiff's allegations of negligent implementation of HAMP fails to state a claim upon which relief may be given as there is no private right of action for plaintiff to sue First Horizon under HAMP. Accordingly, the Trial Court's denial of First Horizon's Motion to Dismiss as to the Count of Negligent Implementation of HAMP is reversed.

Based on the foregoing discussion regarding the lack of a private right of action under HAMP or EESA, plaintiffs allegations of wrongful foreclosure under HAMP should have been dismissed by the Trial Court. *See, Lalwani v. Wells Fargo Bank, N.A.*, 2:11-CV-0084-KJD-PAL, 2011 WL 4574338 (D. Nev. Sept. 30, 2011). *Also see Leake v. Prensky*, 798 F. Supp. 2d 254, 258 (D.D.C. 2011); *Manabat v. Sierra Pac. Mortg. Co., Inc.,* CV F 10-1018 LJO JLT, 2010 WL 2574161 (E.D. Cal. June 25, 2010).

Further, Clay alleges that the contract (SPA) entered into by First Horizon and the United States pursuant to EESA and HAMP "called for Defendant to actively seek to modify home loans and mitigate and/or prevent foreclosures" and that he was "an intended third party beneficiary for who the program was instituted to assist." The so-called "intended third-party beneficiary" claim, in the context of HAMP, has been considered by numerous courts around the country and has been rejected by the vast majority of them. *See Teixeira v. Fannie Mae,* No. 10–11649, 2011 U.S. Dist. LEXIS 77735, 2011 WL 3101811 at *2 (D.Mass. July 18, 2011) (collecting cases); *McInroy v. BAC Home Loan Servicing, LP,* 2011 WL 1770947 at * 3 (collecting cases); *Zoher v. Chase Home Fin.,* 2010 WL 4064798 at * 4; *Hoffman v. Bank of America, N.A.,* No. 10–2171, 2010 U.S. Dist. LEXIS 70455, 2010 WL 2635773 (N.D. Cal. June 30, 2010) (collecting cases).

*Newell* held that a borrower may not attain third party beneficiary status under HAMP, relying on *Astra USA, Inc. v. Santa Clara County, Cal.,* —— U.S. ——, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011). This issue is without merit.

Finally, Mr. Clay contends that "Tennessee courts have long recognized that citizens can be third party beneficiaries to government contracts in certain limited circumstances." *Citing, Smith v. Chattanooga Med. Investors, Inc.*, 62 S.W.3d 178, 181 (Tenn. Ct. App. 2001), which is not a HAMP case. The Court in that case held that plaintiff was a third party beneficiary to the contract. However, the facts and contracts in *Smith* differ significantly from those before this Court. In *Smith,* the Court found that the plaintiff was a third-party beneficiary of the a government contract between the nursing home and the State of Tennessee because the nursing home was obligated as a matter of law to provide Medicaid

services to qualified recipients. In contrast, most of the courts considering third-party beneficiary claims in HAMP have found otherwise, on the grounds that borrowers are not intended third-party beneficiaries because the SPA agreement does not require that the servicer modify all eligible loans, nor is there any language in the agreement that shows that the borrowers are intended third-party beneficiaries. *See Hoffman*, and *Thomas*.

The Trial Court was in error when it denied First Horizon's Motion to Dismiss the third party beneficiary claim, the negligent implementation claim, and the wrongful foreclosure claim. That portion of the Judgment of the Trial Court is reversed and the cause remanded, with the cost of the appeal assessed to George Clay, III.

_____
HERSCHEL PICKENS FRANKS, P.J.